UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------- x
                       :

MARC ALLEN FREUNDLICH        :          3:20 CV 726 (RMS)
                       :

V.                           :
                       :

ANDREW M. SAUL, COMMISSIONER   :
OF SOCIAL SECURITY             :          DATE: APRIL 23, 2021
                       :
-------------------------------------------------- x

<u>RULING ON THE PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE
COMMISSIONER AND DEFENDANT'S MOTION TO REMAND</u>

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeks review of a final decision by the Commissioner of Social Security ("SSA") denying the plaintiff Child's Insurance Benefits under the earnings record of his father.

I.    <u>ADMINISTRATIVE PROCEEDINGS</u>

The plaintiff's alleged onset of disability occurred over sixteen years ago, in 2004, and the administrative proceedings in this case are lengthy, spanning over five years. On December 10, 2015, the plaintiff filed an application for Child's Insurance Benefits on the earnings record of his father, Lester Freundlich. (*See* Doc. No. 19, Certified Administrative Records of Proceedings ["Tr."] 209, 974); *see Freundlich v. Berryhill*, No. 3:18 CV 1356 (RMS), 2019 WL 2490637, at *1 (D. Conn. Jun. 14, 2019) ["*Freundlich I"*]). The plaintiff alleged disability due to attention deficit hyperactivity disorder, anxiety, mood disorder, and pervasive developmental disorder, beginning January 1, 2004, when the plaintiff was fourteen years old.  (*See id.*). After exhausting his administrative remedies, the plaintiff filed his complaint in this court and the case was transferred to the undersigned upon consent of the parties. (*See id.*).  On June 14, 2019, the Court issued a 33-page decision reversing the decision of Administrative Law Judge ("ALJ") Eskunder

Boyd and remanding the case for further proceedings.  (*See* Tr. 974-1006).   Specifically, the Court concluded that the ALJ erred in his consideration of the treating source evidence and failed to develop the record.  (*Id.*).  Judgment entered in that case on June 17, 2019 (Tr. 1007), and pursuant to that Judgment, on July 22, 2019, the Appeals Council issued a remand order. (Tr. 1010).

Thereafter, on November 18, 2019, ALJ Boyd held a second hearing at which the plaintiff testified in person and vocational expert Jane Gerrish testified by telephone.  (Tr. 895-946).  On January 29, 2020, the ALJ issued an unfavorable decision, again denying the plaintiff's claim for benefits. (Tr. 876-85).

Following the five-step evaluation process, the ALJ found that the plaintiff, who was born in 1989, had not attained the age 22 as of January 1, 2004, his alleged onset date, and that he had not engaged in substantial gainful activity since that onset date.  (Tr. 878-79, citing 20 C.F.R. § 404.1571 *et seq.*).

At step two of the sequential analysis, he found that, prior to attaining age 22, the plaintiff had the following severe impairments: anxiety disorder, mood disorder, pervasive development disorder, and attention deficit hyperactivity disorder.  (Tr. 879-80). He further concluded that no impairment met or medically equaled a listing. (*Id.*).

Next, the ALJ determined that, prior to attaining age 22, the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but he had the non-exertional limitations of performing simple, routine repetitive tasks; sustaining concentration, persistence and pace for two-hour segments; engaging in brief and superficial interaction with coworkers and no interaction with the public; working with "little/no change in duties/routines"; and, not performing any work requiring independent judgment[.]"  (Tr. 881-84).

The ALJ concluded that, prior to attaining age 22, there were jobs that existed in significant numbers that the plaintiff could perform, including, dishwasher, laundry worker and garbage collector.  (Tr. 884-85).  Thus, the ALJ found that the plaintiff was not under a disability any time prior to November 20, 2011, the date he attained age 22. (Tr. 885, citing 20 C.F.R. §§ 404.350(a)(5), 404.1520(g)).

In the absence of written exceptions, and "own motion" review by the Appeals Council, the ALJ's January 29, 2020 decision became the final, appealable decision of the Commissioner sixty days thereafter.  (*See* 20 C.F.R § 404.984(d) ("If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand.")).

On May 26, 2020, the plaintiff filed his complaint in this pending action (Doc. No. 1), and on May 28, 2020, the parties consented to the jurisdiction of a United States Magistrate Judge. (Doc. No. 7). This case was transferred accordingly.

On December 18, 2020, the plaintiff filed his Motion to Reverse the Decision of the Commissioner (Doc. No. 21), with a Statement of Material Facts (Doc. No. 21-1), and a brief in support (Doc. No. 21-2).  On March 8, 2021, the defendant filed a Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Reversal and Remand of the Cause to the Defendant (Doc. No. 25), with a brief in support. (Doc. No. 25-1). The defendant moves for remand of the final decision for further administrative proceedings under Sentence Four of 42 U.S.C. § 405(g).  On March 10, 2021, the plaintiff filed his response to the defendant's motion. (Doc. No. 27; *see* Doc. No. 26). The sole issue before the Court, therefore, is whether the case shall be remanded for further proceedings or remanded solely for the calculation of benefits.  (Doc. Nos. 25, 27).

For the reasons stated below, the plaintiff's Motion to Reverse (Doc. No. 21) is denied as moot in light of the defendant's Motion, and the defendant's Motion to Remand (Doc. No. 25) is granted in part and denied in part such that this case is remanded for the calculation of benefits.

II.     DISCUSSION

    A.     TYPES OF REMAND

The decision of an ALJ may be reversed and remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  This fourth sentence of 42 U.S.C. § 405(g), known as "Sentence Four," gives the Court the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner.  42 U.S.C. § 405(g).

"In deciding whether a remand is the proper remedy," the Second Circuit has "stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) (citation omitted). When a district court remands solely for the calculation of benefits, the court must find that, "irrespective of the legal error, the record contains 'persuasive proof' of the claimant's disability and 'a remand for further evidentiary proceedings would serve no purpose.'" *Casanova v. Saul*, Civ. No. 3:19-cv-0086-TOF, 2020 WL 4731352, at *2 (D. Conn. Aug. 14, 2020) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d. Cir. 1980)). Persuasive proof of disability exists when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision."  *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

B.   PARTIES' ARGUMENTS

The defendant concedes that remand is warranted because the ALJ erred in his treatment of the opinion evidence of the record; consequently, "[r]emand is required for a new decision that evaluates the opinion evidence in accordance with the applicable regulations at 20 C.F.R. § 404.1527." (Doc. No. 25-1 at 1).  Specifically, the defendant acknowledges that, although the ALJ "did discuss and weigh [the March 2016 opinion of] Dr. [Jeffrey] Koffler[, the plaintiff's long-time psychiatrist,] he did not discuss Dr. Koffler's testimony, Dr. [John] Gelinas[, Jr.'s] opinion, or Dr. [James W.] Pier's opinion."  (*Id.* (citing Tr. 878-85)). The defendant argues, however, that despite these errors, remand for the calculation of benefits is not warranted because the evidence does not demonstrate that the only possible conclusion is a finding of total disability thereby "'render[ing] any further proceedings pointless.'"  (Doc. No. 25-1 at 2 5 (citing *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (additional citation omitted)). The defendant contends that the opinions that the ALJ failed to properly consider "are not particularly probative of [the] [p]laintiff's functioning during the relevant period."  (Doc. No. 25-1 at 3).

Conversely, the plaintiff asserts that a remand for calculation of benefits is warranted given the ALJ's failure to follow the "clear instruction" of this Court, and "[h]ad the ALJ followed the law and afforded *controlling weight* to the stated opinions of long-time treating psychiatrist [Dr. Koffler] (addressed by the Court in [*Freundlich I*]), an award of benefits would have been a foregone conclusion."  (Doc. No. 27 at 4, 9 (emphasis in original)).  Additionally, the plaintiff argues that the he has been "required to rely on his father for his maintenance and support" such that "[e]xtending his penury/financial dependency is, at the very least, difficult to justify."  (*Id.* at 6).

The sole issue for the Court's determination, therefore, is the type of remand order that is appropriate in this case.

### C.    REMAND FOR CALCULATION OF BENEFITS IS WARRANTED

Following remand from the Court in *Freundlich I*, on July 22, 2019, the Appeals Council issued its remand order stating: "the Appeals Council vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court." (Tr. 1010). The Appeals Council directed the ALJ to "take any further action needed to complete the administrative record and issue a new decision." (*Id.*).

It is undisputed that the ALJ failed to follow the Court's remand order, and it is well settled that an ALJ's failure to follow the dictates of a remand order of the court is reversible error. *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) (holding that "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error subject to reversal on further judicial review"). In this case, there was evidence before the ALJ that, as the defendant implicitly acknowledges, the ALJ simply failed to consider. Specifically, it was clear in this Court's decision in *Freundlich I*, that the ALJ needed to revisit Dr. Koffler's opinion and testimony on remand (*see* Tr. 994-1001), and in doing so, consider the consistency of Dr. Koffler's opinion and testimony with the other opinions in the record, including the opinion of Dr. Gelinas. (*See* Tr. 999-1000). In *Freundlich I*, this Court held that the ALJ erred in

> discounting Dr. Koffler's opinion and testimony, not because it was unsupported by conflicting medical evidence, but because he found Dr. Koffler's 'observations [in] contrast with the claimant's ability to independently travel[,]' and that he found his testimony that the plaintiff did not feel that his father helped him with planning his life as 'suggest[ive] [of the fact] that the claimant has the ability to make some independent planning.'

(Tr. 996).   As this Court stated, "it [was] notable that Dr. Koffler's 2016 assessment [was] consistent with several opinions issued during the plaintiff's alleged period of disability," including the opinion of Dr. Gelinas. (Tr. 998). Thus, one purpose of the remand was for the ALJ to properly apply the treating physician rule[1] which required the ALJ to assign "controlling weight" to Dr. Koffler's opinion "'so long as it [was] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in [the] case record.'" (Tr. 993 (quoting *Burgess*, 537 F.3d at 128) (additional citation omitted)). In other words, the ALJ was supposed to consider Dr. Koffler's 2016 opinion and his testimony, and then determine whether Dr. Koffler's opinion was consistent with and supported by other medical opinions of record.

Among the other opinions of record was Dr. Gelinas's opinion and a new opinion from October 21, 2019, from Dr. James Pier. Although the ALJ did discuss and weigh Dr. Koffler's March 2016 opinion, it is undisputed that he did not discuss Dr. Koffler's testimony, Dr. Gelinas's opinion or Dr. Pier's opinion. Yet, the defendant wants to afford an ALJ another opportunity to review and "evaluate" the *same* opinion evidence the ALJ had, but ignored, on the previous remand. (Doc. No. 25-1 at 2). A remand for that purpose is not appropriate under the circumstances of this case, particularly given this Court's detailed consideration in *Freundlich I* of the errors the ALJ made in rejecting the medical opinions of the plaintiff's treating providers. Rather, the Court must determine whether the opinions of record, had they been considered by the ALJ, contained "'persuasive proof' of the claimant's disability [such that] 'a remand for further evidentiary proceedings would serve no purpose.'" *Casanova*, 2020 WL 4731352, at *2 (quoting *Parker*, 626 F.2d at 235).

---

[1] The plaintiff filed his application for Child's Insurance Benefits on December 10, 2015. (Tr. 203-04). Accordingly, the treating physician rule, as set forth in the Regulations prior to March 2017, applies to this action.

As discussed in *Freundlich I*, Dr. Koffler began treating the plaintiff in 2012 and his "March 16, 2016 evaluation [was] remarkable for its thoroughness." (Tr. 994). As this Court detailed,

> [Dr. Koffler] noted the plaintiff's tendency to talk "endlessly[,]" as well as his several "social interaction problems" and that his "endless[] talk[ing] without adjusting to others' timeframes continue[s] to reflect the neurodevelopmental challenges which have affected his life and relationships all the way through." [He] explained that the plaintiff's social interactions were "fraught with problems, largely due to his difficulty fielding signals from others, and his persistent [and] repetitive behavior." According to Dr. Koffler, the plaintiff was "frequently" limited in his ability to interact appropriately with others and in his ability to respect or respond appropriately to others in authority, and he had "[n]o ability" or it was "always a problem" for him to ask questions, request assistance or get along with others without distracting them.

(Tr. 994-95) (internal citations & footnote omitted). Dr. Koffler found the plaintiff "highly distractible," with "atypical" speech and "bursts of [illegible] phrases, pauses (silence) and stammering interspersed, so overall his speech production [was] dysfluent." (Tr. 995) (citations omitted). In terms of his thought content, Dr. Koffler reported that the plaintiff's "content fluctuate[d]," and his affect "varie[d] between mildly blunted and constricted, and brightly [illegible] and enthusiastic." (*Id.*) (citation omitted). His "[m]ood fluctuate[d,]" his insight was "poor[,]" his social judgment was "very poor[,]" reflecting "chronic disability deriving from his autism spectrum disorder[,]" and his ability to handle frustration was "quite poor[] most of the time." (Tr. 996) (citation omitted).

In his decision following remand, however, the ALJ assigned "partial weight" to this March 2016 evaluation of the plaintiff, noting only that the plaintiff "ha[d] poor coping skills and limited ability to relate to others"; he rejected Dr. Koffler's opinion that the plaintiff "lack[ed] the ability to follow and understand simple instructions[,]" and he ignored the remainder of Dr. Koffler's opinion and testimony. (Tr. 883; *see* Tr. 102). In fact, the ALJ did not reference Dr. Koffler's

testimony at all, yet in his first decision, the ALJ acknowledged that Dr. Koffler's testimony was entitled to "some weight" (Tr. 23), and, as this Court discussed in *Freundlich I*, that testimony was consistent with the opinions in the medical record. (Tr. 996). Thus, that testimony was most certainly worthy of consideration on remand.

Similarly, as this Court noted in *Freundlich I*, the opinion of Dr. Koffler was consistent with the opinion of Dr. Gelinas, who authored lengthy findings on June 18, 2007, when the plaintiff was seventeen. (Tr. 999-1000; *see* Tr. 1622-45). In *Freundlich I*, the Court noted that the ALJ erred in failing to consider the consistency of Dr. Gelinas's opinion with Dr. Koffler's, and on remand, the ALJ had the benefit of Dr. Gelinas's 23-page assessment. (*See* Tr. 999; Tr. 1615-1617, 1622-45). Thus, on remand, the ALJ should have followed the treating physician rule, as directed in the Court's remand order.

The treating physician rule requires that when the treating physician's opinion is not given controlling weight, "the ALJ must explicitly consider" a number of factors to determine the weight to assign to the opinion, including, "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)); *see generally* 20 C.F.R. § 404.1527(c). The ALJ then must "give good reasons in [his] notice of determination or decision for the weight [given the] treating source's [medical] opinion." *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). Unless "a searching review of the record" provides assurance that "the substance of the treating physician rule was not traversed," an ALJ's failure to apply the factors set forth by the

Second Circuit leaves the Court unable to conclude the error was harmless and requires remand. *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32-33).

In this case, however, the ALJ did not so much as reference Dr. Gelinas's name in his decision. Had he considered Dr. Gelinas's opinion, he would have noted, as this Court did in *Freundlich I,* the consistency of Dr. Gelinas's opinion with Dr. Koffler's opinion. Specifically, as this Court detailed in *Freundlich I,*

> Dr. Gelinas opined that the plaintiff had "significant interpersonal weaknesses that are manifestations of his diagnosis" of non-verbal learning disability, he "harbors a long-standing social phobia[,]" and, he "struggles significantly within the scope of his executive functioning, which limits his ability to plan, organize, prioritize, and attend to details and deadlines." Dr. Gelinas opined that the plaintiff's "poor academic record . . . [was] largely a direct result of his executive dysfunction, limited insight, and interpersonal deficits."

(Tr. 999-1000) (citations omitted).

Moreover, on remand, the plaintiff underwent a neuropsychological evaluation by Dr. Pier, whose conclusions were consistent with Dr. Koffler's and Dr. Gelinas's, but again, the ALJ failed to even reference Dr. Pier in his decision. Dr. Pier's evaluation contains a detailed discussion of the previous evaluations and related studies of the plaintiff during the relevant time at issue in this case. (Tr. 1649-50). Dr. Pier relied on this information in forming his conclusion that, "[c]onsistent with previous evaluations, the patient struggled on complex test[s] that were nonverbal and visual spatial in nature." (Tr. 1661). He found these difficulties "related primarily to deficits in areas of executive dysfunction." (*Id.*). As he noted, the plaintiff's impairments were not new; his findings were consistent with evaluations from the plaintiff's childhood, the relevant time at issue. He explained:

> This was probably also the case during prior evaluations which raised the concern regarding nonverbal learning disorder. Weakness in planning, organization and response modulation often compromised performance on nonverbal and visual spatial tasks. When tasks were more organized, orderly and structured, his

performance was somewhat better, even when tasks were nonverbal. These difficulties were quite consistent with the types of executive deficits typically seen in individuals with autism spectrum disorder. Indeed, nonverbal learning disorder is accurately thought of as representing one facet of autism and there is extensive overlap between these two clinical entities. Both conditions involve struggles with complex and novel situations, ambiguous tasks, identification and utilization of social boundaries, recognizing the importance of interpersonal space, attending to nonverbal aspects of communication and developing and maintaining social relationships.

(Tr. 1661). Dr. Pier opined that the plaintiff would "likely function best in situations that are highly structured, repetitive and predictable and which do not rely heavily on sustained, rapid pace and level of productivity[,]" and that he would "benefit from executive coaching" from an expert specializing in "executive dysfunction." (Tr. 1666). Dr. Pier concluded that the plaintiff had "significant deficits with regard to executive functions and social responsiveness/skills." (Tr. 1662). He added, "These have been long-standing, emerging in childhood and persisting to the present time." (*Id.*). Both this assessment and the lengthy assessment of Dr. Gelinas were critical to the ALJ's determination of the plaintiff's ability to perform in a work-setting. Yet, the ALJ did not reference either opinion in his decision. The ALJ's failure to consider these opinions resulted in a residual functional capacity assessment that was fundamentally flawed.

In his decision, the ALJ concluded that the plaintiff had a "mild limitation" in understanding, remembering or applying information (Tr. 879), a "moderate limitation" in interacting with others (Tr. 880), a "moderate limitation" in concentrating, persisting or maintaining pace (*id.*), and a "moderate limitation" in adapting or managing oneself. (*Id.*). To the contrary, the records that the ALJ ignored provide substantial evidence of more severe functional limitations in these four areas. In the absence of any discussion of the foregoing opinions, it is impossible for the Court to determine on what evidence the ALJ relied on to reach his RFC assessment. Moreover, contrary to the opinions that the ALJ ignored, he indicated that the

11

plaintiff's mental impairment did not meet the criteria of a listed impairment because "[t]he record does not show that claimant had a highly supported environment or that he required significant assistance to maintain adaptive functioning." (Tr. 881). But the ALJ had the evidence before him and chose to ignore it. A remand for further evidentiary proceedings is not the course the Court is willing to take.

'"Where there are gaps in the administrative record or the ALJ has applied an improper legal standard,' the matter should be remanded to the Commissioner 'for further development of the evidence."' *Russell v. Saul*, 448 F. Supp. 3d 170, 180-81 (D. Conn. 2020) (quoting *Parker v. Harris*, 626 F.2d at 235). In this case, the administrative record was complete. The Court afforded the ALJ the opportunity to properly apply the treating physician rule, thereby remedying the error made in his first decision. The defendant, acknowledging that the ALJ erred again on remand, wants to afford the ALJ yet another opportunity to correct the errors he has made twice. "The Commissioner 'is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" *Russell*, 448 F. Supp. 3d at 182 (quoting *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (internal quotation marks omitted). Moreover, when the Court has '"no apparent basis to conclude that a more complete record might support the Commissioner's decision,' a remand for calculations of benefits is appropriate." *Masoud v. Saul*, 448 F. Supp. 3d 147, 159-60 (D. Conn. 2020)(quoting *Rosa*, 168 F.3d at 83)(citing *Sczepanski v. Saul*, 946 F.3d 152, 161 (2d Cir. 2020)(same)); *see also Russell,* 448 F. Supp. 3d at 181. As the court has explained, '"Remands in cases such as this one are worse than purposeless. They are expensive. Plaintiff . . . has already demonstrated entitlement to benefits. Quite apart from the administrative expenses that another remand would entail, each day of delay exacts a cost from a demonstr[ably] deserving claimant."' *Masoud*, 448 F. Supp. 3d

at 160 (quoting *Maher v. Bowen*, 648 F. Supp. 1199, 1203 (S.D.N.Y. 1986) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983)).

Accordingly, given the lengthy history of this case, the ALJ's failure to follow the Court's remand order, and the content and consistency of the medical opinions, a rehearing is not warranted.  The case will be remanded solely for the calculation and payment of benefits.

VI.   <u>CONCLUSION</u>

For the reasons stated above, the plaintiff's Motion to Reverse (Doc. No. 21) is denied as moot in light of the defendant's Motion, and the defendant's Motion to Remand (Doc. No. 25) is granted in part and denied in part such that this case is remanded for the calculation of benefits.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); FED. R. CIV. P. 73(c).

Dated this 23rd day of April, 2021 at New Haven, Connecticut.

/s/Robert M. Spector, USMJ
Robert M. Spector
United States Magistrate Judge